IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS R. MADSEN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ENTERING VERDICT**<br><br>Case No.  2:09-cr-00808<br><br>Judge Clark Waddoups |

## I.      INTRODUCTION

After substantial briefing by the parties and numerous hearings, the court has satisfied itself relating to its concerns about the trial and jury verdict in the Government's case against Defendant for attempted tax evasion. Accordingly, the court now orders the entry of the jury's verdict against Defendant and the sentencing phase to proceed. The court also addresses Defendant's motions pursuant to Rules 34, 45, 29, and 33 of the Federal Rules of Criminal Procedure.

## II.      BACKGROUND

A grand jury first indicted Defendant on one count of tax evasion in violation of 26 U.S.C. § 7201[1] on October 22, 2009, then again in a Superseding Indictment on October 5, 2011, and finally in the Second Superseding Indictment on October 19, 2011 [Dkt. No. 64]. The

---

[1] "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $ 100,000 ($ 500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution."

Defendant was tried beginning on January 9, 2012[2] under the Second Superseding Indictment on the one count of tax evasion in the amount of approximately $1.3 million in tax, assessed interest, and penalties for tax years 1995, 1999, 2000, 2001, 2002, 2003, and 2004 based on various specified affirmative acts allegedly committed by Defendant in furtherance of his intent to evade the payment of tax. The Second Superseding Indictment lists affirmative acts committed between September 12, 2003 and 2007. The Defendant, after having been fully advised, elected to represent himself during trial with the assistance of stand-by counsel. The jury returned a verdict of guilty on January 12, 2012, unanimously finding Defendant guilty as to Count 1 of the Second Superseding Indictment charging Defendant with attempted tax evasion. (*See* Tr. Jury Verd., at 4:2-6 [Dkt. No. 164].)

After the jury entered its verdict the court requested the parties to submit memoranda briefing the following three issues: (1) "[H]as the statute of limitations run on the collection of those taxes [for the 1995 tax year] to the effect that they no longer can serve as a basis for proof that there is tax due and owing for the Indictment period?"; (2) Was "the income that was presented in evidence . . . once appropriate deductions and offsetting arrangements are made . . . sufficient to create a substantial tax liability"?; and (3) "[I]s an assessment by the IRS, without supporting evidence, sufficient proof to sustain in a criminal case the requirement that there's proof of a substantial tax due and owing?" (*Id.* at 6.) Post-trial motions have been argued by counsel for the Defendant.

The court's primary concern in delaying the entry of the verdict was whether the statute of limitations effectively barred the first year included in the Indictment (1995), thus casting doubt on whether it would be possible for the jury to return a unanimous verdict because the

---

[2] The Government notes that trial was originally set for February 1, 2010 but was continued on ten different occasions, all but one of which was on Defendant's motion. (Pl.'s Resp. to Court's Req. for Briefing 2 [Dkt. No. 166].)

Second Superseding Indictment charged all acts of the evasion of payment of tax in a single count. This seemingly duplicitous[3] approach of presenting the charges in the Second Superseding Indictment meant that it would be impossible to know whether or not a juror convicted Defendant based on evidence relating specifically to the tax deficiency for 1995.[4] In sum, if the statute of limitations barred the tax year 1995, then because all acts of the evasion of payment of tax are charged in a single count in the Indictment, a conviction would violate the Sixth Amendment because if any single juror considered 1995 as a basis for conviction (and it would not be possible to know whether that were the case), then the jury verdict would not have been unanimous based on eligible tax years.

The court will address its three questions under two heads below, combining its second and third questions for consideration under the heading "Sufficiency of the Evidence."

### III.   ANALYSIS

In delaying the verdict to allow for briefing, the court has been guided by the fundamental principle that the Sixth Amendment guarantees criminal defendants a right to a unanimous verdict. U.S. Const. amend. VI.[5] Whether the Second Superseding Indictment in this instance is actually technically "duplicitous" or not, by including a tax year that is arguably

---

[3] An indictment is duplicitous when it charges more than one separate offense in a single count. *See United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992).

[4] The Government argued that "evasion of payment of tax (as compared to assessment of tax) is generally charged in a single count when the defendant engages in a course of conduct to evade the payment of tax for multiple years." (Pl.'s Reply to Def.'s Resp. to Court's Req. for Briefing 15 [Dkt. No. 171].) On this basis, the Government asserts that the Second Superseding Indictment is not, in fact, technically "duplicitous". (*Id.* at 16.) The court finds that whether this is true or not, it does not overcome the problem of jury unanimity if some of the affirmative acts alleged occurred at a time barred by the statute of limitations.

[5] *See also* Fed. R. Civ. P. 31(a) (2012) ("The jury must return its verdict to a judge in open court. The verdict must be unanimous."); *Andres v. United States*, 333 U.S. 740, 748 (U.S. 1948) ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply. In criminal cases this requirement of unanimity extends to all issues—character or degree of the crime, guilt and punishment—which are left to the jury. A verdict embodies in a single finding the conclusions by the jury upon all the questions submitted to it."); *see also generally Williams v. Fla.*, 399 U.S. 78 (1970); *United States v. Morris*, 612 F.2d 483, 488-489 (10th Cir. 1979) ("in a federal, criminal case the requirement of unanimity applies not only by reason of F.R.Crim.P., Rule 31(a), but also by reason of the Sixth Amendment"), *disapproved on other grounds in United States v. Anderson*, 896 F.2d 1076, 1078 (7th Cir. 1990).

barred by the statute of limitations, it invites the same concerns as a formally duplicitous indictment. *See Haddock*, 956 F.2d at 1546 (listing dangers of a duplicitous indictment including that "[a] jury may convict a defendant without unanimously agreeing on the same offense"). Thus, the jury might have convicted Defendant without having unanimously agreed on acts not barred by the statute of limitations. The Tenth Circuit has expressed the importance of jury unanimity in a manner that this court believes justifies its request for additional briefing on the statute of limitations question by explaining that "upon the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for there is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *Morris*, 612 F.2d at 489 (internal citations, quotations and alteration omitted).

## A.      Statute of Limitations and Unanimity of Verdict

The court commends the parties for their detailed and sensitive briefing of this issue. As noted above, because of its constitutional concerns about the jury's verdict, the court has not accepted the verdict pending briefing on these concerns.[6] The briefing has raised a substantial question about whether, in the Tenth Circuit, the statute of limitations is viewed as a jurisdictional bar.[7] If it is a jurisdictional bar, and if the Defendant is correct in his argument

---

[6] In the April 5, 2012 hearing, the court explained that "I believe that there is a function for the court to find that a proper verdict has been entered. . . . And in my mind I have not yet accepted that verdict. I have not yet entered judgment, and I'm not prepared to do so until I'm satisfied that this jury was correctly instructed on the requirements of unanimity." (Tr. Hrg. April 5, 2012, at 39 [Dkt. No. 177].)

[7] To summarize a complex point of contention between the parties, Defendant argues that in the Tenth Circuit, the statute of limitations acts as a bar to prosecution and is therefore jurisdictional, citing *Waters v. United States* for the proposition that "if recognition of a distinction between the statute of repose in civil cases and the substantive bar in criminal cases, is to have any meaning in the administration of criminal justice, the statute of limitations must be held to affect not only the remedy, but to operate as a jurisdictional limitation upon the power to prosecute and punish. . . . It is plainly a limitation upon the power to prosecute or to punish. It is, therefore, jurisdictional, and noticeable at this [appellate] stage of the proceedings." 328 F.2d 739, 743 (10th Cir. 1964). The Government, by contrast, argues that the Tenth Circuit has more recently clarified that the statute of limitations is not jurisdictional, relying on *United States v. Flood*, 635 F.3d 1255, 1258 (10th Cir. 2011) (explaining that "the statute of limitations is an affirmative defense that can be waived if it is not asserted at trial"). Standing between these two seemingly contrary positions is *United States v. Cooper*, which cites *Waters* approvingly for the holding that the statute of limitations "operates as a bar to prosecution" but notes that in *Waters* "[t]he court did not equate the statute with the

about the mechanics of the applicable statute of limitations in this case, then the court's constitutional concerns about the unanimity of the verdict would be validated. The briefing on the mechanics of the statute of limitations, however, has persuaded the court that it need not settle this question to resolve its present concerns. That is, because the court finds that tax year 1995 is not barred by the statute of limitations, contrary to Defendant's arguments, and because the jury was properly instructed that they must find an affirmative act within the statute of limitations period, the question of whether the statute of limitations is jurisdictional is moot and the court must accept the verdict.

### 1.    Rule 34

Because the court had not yet accepted the verdict and in light of the jurisdictional question surrounding the statute of limitations, Defendant moved the court to arrest judgment pursuant to Rule 34 of the Federal Rules of Criminal Procedure during oral argument on April 5, 2012. (Tr. Hrg. Apr. 5, 2012, at 36, 39 [Dkt. No. 177].) Under Rule 34, "the court must arrest judgment if (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a) (2012). A court can take this

---

concept of subject matter jurisdiction, and we do not believe such a parallel exists. Moreover, while we agree with those courts which hold a defendant can waive the statute of limitations, we do not look upon such a waiver as a waiver of jurisdiction." 956 F.2d 960, 962 (10th Cir. 1992). But the Tenth Circuit in *Cooper* specifically held that the district court in *Cooper* was mistaken in finding that the statute of limitations is an affirmative defense, *id.* at 961, even though *Flood* cites *Cooper* precisely to support its holding that "defendants can expressly waive the bar to prosecution established by the statute of limitations." 635 F.3d at 1258. And yet in *Cooper* the Tenth Circuit cited *Waters* as its authority to counter the idea that the statute of limitations is an affirmative defense, explaining that *Waters* "has never been overruled by our en banc court." *Id.* The *Cooper* court further explained that "one panel of this court cannot overrule the holding of another panel." 956 F.2d at 961 (considering whether *Waters* was overruled by *United States v. Gallup*, 812 F.2d 1271, (10th Cir. 1987), in which the Tenth Circuit had declined to consider the statute of limitations issue because it was raised for the first time on appeal). The *Cooper* court also distinguished *Gallup*, observing that "the only statute of limitations issue considered by *Gallup* was whether, in a conspiracy case, *the government had to prove an overt act charged in the indictment was committed before the limitation expired*. The court held the defendant had waived the issue by failing to raise it in the district court. That ruling did not touch upon the *Waters* holding that the substantive offense could not be prosecuted if it was not filed before expiration of the limitation period." *Id.* (emphasis added). This court notes that Defendant's situation in this case is more analogous to the facts in *Gallup*, which would lead to a conclusion consistent with *Flood*. But the fact remains that both *Waters* and *Cooper* specifically reject the idea that the statute of limitations is an affirmative defense, which is what *Flood* specifically held despite citing to *Cooper*. And *Flood* was not an en banc decision which is what the *Cooper* court expressly observed would be required to overrule *Gallup* (or *Waters*).

action "on its own" motion, *id.* at 34(a), or upon the defendant's motion, in which case the defendant "must move to arrest judgment within 14 days *after the court accepts a verdict* or finding of guilty, or after a plea of guilty or nolo contendere." *Id.* at 34(b) (emphasis added). Defendant argues that because he raised this motion before the court has accepted the verdict, the motion is timely. (Def.'s Am. Mem. Supp. Mot. Judg. Acquittal 3 [Dkt. No. 180].) The Government contends that the motion is untimely because the court is not "empowered, through an intrinsic grant of inherent authority, to indefinitely extend the timing provisions of the Federal Rules of Criminal Procedure." (Pl.'s Opp. Def.'s Mem. Supp. Mot. Judg. Acquittal 3 [Dkt. No. 182].) As to the phrase "after the court accepts a verdict" in the timing requirement for bringing a Rule 34 motion, the Government explains that it means "when the jury comes back and gives a verdict to the court." (Tr. Hrg. Apr. 5, 2012, at 39 [Dkt. No. 177].) Absent direct guidance on this novel question, the court finds that the plain language of the Rule should govern and that the motion is timely based on the court's own expressed posture that it has not yet accepted the verdict.[8]

The Second Superseding Indictment charged that Defendant "did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing . . . for tax years 1995, 1999, 2000, 2001, 2002, 2003, and 2004. . . ." (Second Superseding Indictment 2-3 [Dkt. No. 64].) In considering Rule 34(a)(1), the court finds that this language is sufficient to charge the offense and that words such as "specifically intended" or "intentionally" are not additionally required in order to express the requisite specific intent, as argued by Defendant. (*See* Def.'s Am. Mem. Supp. Mot. Judg. Acquittal 5 [Dkt. No. 180]; *compare* Pl.'s Opp. Def.'s Mem. Supp. Mot.

---

[8] The court notes that Rule 29 of the Federal Rules of Criminal Procedure, for instance, does not key timing or other mechanics to the time when the court "accepts a verdict" but rather speaks of when a "jury returns a verdict," *see* Rule 29(b), 29(c)(2), or generally "after a guilty verdict or after the court discharges the jury, whichever is later," *see* Rule 29(c), 29(c)(3) ("after jury discharge"), 29(d)(1) ("after a guilty verdict").

Judg. Acquittal 4 [Dkt. No. 182].) The most important considerations in reviewing the sufficiency of an indictment are whether it "first, contains the elements of the offense charged" and next, whether it "fairly informs a defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "An indictment is 'generally sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense.'" *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quoting *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983)). More importantly in this case, although "the legal sufficiency of an indictment may be challenged at any time, where the objection is not raised before or during trial, the challenged language will be 'construed liberally in favor of validity.'" *United States v. Sullivan*, 919 F.2d 1403, 1410 n.5 (10th Cir. 1990).

"To obtain a conviction for evasion, the government must prove three elements: 1) the existence of a substantial tax liability, 2) willfulness, and 3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Chisum*, 502 F.3d 1237, 1244 (10th Cir. 2007) (citing *United States v. Meek*, 998 F.2d 776, 779 (10th Cir. 1993)). The jury was instructed accordingly, including specifically as to the meaning of "willfully" in the statutory language with reference to "specific intent." (*See* Jury Instruction 14-C, 14-D, at 26-27 [Dkt. No. 159].) As the Government argued, "the language of the Second Superseding Indictment tracks the statute" in providing that Defendant must have acted "willfully" and accords with the requirements of controlling cases such as *Chisum* and others. (Pl.'s Opp. Def.'s Mem. Supp. Mot. Judg. Acquittal 6 [Dkt. No. 182].) In fact, the Tenth Circuit has reviewed and specifically found a very similar indictment to be sufficient. *Chisum*, 502 F.3d at 1244-45 (indictment, as

7

here, merely used the word "willfully" as contained in the statute and the allegations were found to "contain the elements of tax evasion . . . provide sufficient notice of the charges and are drawn with sufficient specificity to foreclose further prosecution on the same charges").

Because the Second Superseding Indictment sufficiently charges the offense of tax evasion under controlling precedent, and based on the discussion below concluding that the application of the statute of limitations does not bar this prosecution, the court denies Defendant's motion to arrest judgment pursuant to Rule 34. (Def.'s Am. Mem. Supp. Mot. Judg. Acquittal 5 [Dkt. No. 180].)

      2.    *Statute of Limitations*

As noted above, "[i]n order to prove a defendant guilty of tax evasion, the government must show (1) a substantial tax liability, (2) willfulness, and (3) an affirmative act constituting evasion or attempted evasion." *United States v. Anderson*, 319 F.3d 1218, 1219 (10th Cir. 2003). The applicable statute of limitations is six years[9] and "does not begin running until the crime is complete." *United States v. Payne*, 978 F.2d 1177, 1179 (10th Cir. 1992). As a general rule, "[a] crime is complete as soon as every element in the crime occurs." *Id.* (citation and quotation omitted). "The failure to file a tax return is insufficient to establish the affirmative act necessary for a 7201 conviction." *Id.* at 1178.[10] This is because tax evasion requires both a substantial tax liability and one or more affirmative acts constituting evasion or attempted evasion to be "complete". And, as the Government explains, "[i]t is neither categorically the last affirmative act nor the existence of a tax deficiency that determines the statute of limitations, but rather that

---

[9] "No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years— . . . (2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof." 26 U.S.C. § 6531(2).

[10] As a matter of law, the failure to file a tax return by itself is a misdemeanor offense under § 7203 and, without more, does not amount to the felony offense of tax evasion under § 7201. *See Anderson*, 319 F.3d at 1219.

which occurs latest in time, *thus completing the crime*. (Pl.'s Reply to Def.'s Resp. to Court's Req. Brief. 6 [Dkt. No. 171] (emphasis added).) In *Payne*, for instance, the defendant committed affirmative acts to evade taxes before filing his tax returns; as a result, his crime of tax evasion was not "complete" until he also actually incurred a tax deficiency, which occurred when his tax liability for the years in question become due on "April 15 of each succeeding year," i.e. when his tax return for a given year was due. *Payne*, 978 F.2d at 1179.

But in *Anderson*, the Tenth Circuit held that "in tax evasion cases where, as here, the defendant commits acts of evasion after incurring a tax liability, the statute of limitations begins to run on the date of the last affirmative act of evasion." 319 F.3d at 1219.[11] This follows because "Section 7201 criminalizes not just the failure to file a return or the filing of a false return, but the willful attempt to evade taxes *in any manner*." *Id.* at 1219-1220 (citing *Ferris*, 807 F.2d at 271) (emphasis in original). Thus, citing *Payne*, the *Anderson* court noted that "this rule is not inconsistent with our own jurisprudence"; in other words, the same rule applies in both

---

[11] The *Anderson* court noted that it was joining its sister districts in holding that "when a defendant commits a series of evasive acts over several years after incurring a tax liability, the statute of limitations begins to run on the date of the last evasive act." *Id.* In particular, it discussed *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986). In formally adopting the rule in *Ferris* on the how the statute of limitations should be applied to tax evasion cases, the Tenth Circuit in *Anderson* surveyed the other circuits that had similarly applied the statute of limitations:

> The Sixth Circuit reached the same conclusion in *United States v. Dandy*, 998 F.2d 1344, 1355 (6th Cir. 1993), emphasizing that 'to hold otherwise would only reward a defendant for successfully evading discovery of his tax fraud for a period of six years subsequent to the date the returns were filed.'

> A number of other circuits have followed suit. *See United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) (limitations period for violation of § 7201 begins to run at date of last affirmative act of evasion); *United States v. Winfield*, 960 F.2d 970, 973-75 (11th Cir. 1992) (acts of evasion following the filing of tax return may satisfy affirmative act element of the offense of tax evasion under 26 U.S.C. § 7201; therefore, prosecution is timely so long as last affirmative act of evasion occurred within six years of filing indictment); *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987) ("Even if the taxes evaded were due and payable more than six years before the return of the indictment, the indictment is timely so long as it is returned within six years of an affirmative act of evasion."); *United States v. Trownsell*, 367 F.2d 815, 816 (7th Cir. 1966) (where indictment charged conduct ending on February 2, 1961, indictment returned April 16, 1964, was timely).

*Id.* at 1220.

*Payne* and *Anderson* because in both scenarios, the crime must be "complete" before the statute of limitations begins to run. Continuing its discussion of *Ferris*, the Tenth Circuit in *Anderson* further observed that "[i]n light of the fact that evasive acts *following the filing of a return* may be considered part of the offense, the court [in *Ferris*] held that 'it is the date of the latest act of evasion, not the due date of the taxes, that triggers the statute of limitations.'" *Id.* (emphasis added).[12] To illustrate, in *Ferris*, "the defendant incurred tax liabilities in 1976 and 1977, failed to file returns in those years, made a false statement to IRS agents as late as 1983, and was indicted in 1985. The First Circuit concluded that while the defendant incurred his tax liabilities in 1976 and 1977, his affirmative act of evasion in 1983 brought the offense within six years of the indictment." *Id.* at 1219. In *Anderson*, by comparison, the defendant argued that since he incurred his tax liability in 1992 and the indictment was not filed until 1999, the case was barred by the six year statute of limitations. *Id.* at 1218. But the defendant committed an evasive act relating to this tax liability in 1996 by filing a tax return denying any interest in a foreign bank account. Filing the 1996 tax return was the defendant's final "evasive act" and meant that "the indictment filed against [him] in 1999 was filed well within the six-year statute of limitations." *Id.* at 1219. Thus, the *Anderson* court distinguished *Payne* while emphasizing that the same rule applied.[13]

---

[12] In fact, the *Anderson* court explicitly compared the scenarios in *Payne* and *Ferris* (and, by extension, *Anderson*): "While this formulation of the rule is correct under the facts of *Ferris* where the defendant committed acts of evasion after incurring a tax liability, under some circumstances the limitations period will begin to run on the due date of the taxes. For example, this may be true when the crime of tax evasion is completed when defendant fails to file a return and no subsequent evasive acts occur." *Id.* at 1220 n.2 (citing *Payne*, 978 F.2d 1177 and *United States v. King*, 126 F.3d 987 (7th Cir. 1997)).

[13] "In *Payne* . . . the defendant incurred additional tax liabilities after taking an affirmative evasive act, and we concluded this extended the duration of the offense. In the instant case, as in the other circuit court decisions discussed above and noted in *Payne*, the defendant took additional evasive acts after incurring a tax liability, similarly extending the duration of the offense. Thus, Anderson's affirmative acts of evasion through 1996 brought the offense within the limitations period." *Anderson*, 319 F.3d at 1221.

The Tenth Circuit again explained the application of this rule in both scenarios in *United States v. Thompson*, distinguishing and yet simultaneously following *Payne* as in *Anderson*. 518 F.3d 832 (10th Cir. 2008). "In *Payne* . . . we addressed the situation where a defendant had committed an affirmative act of evasion but had not yet incurred a tax deficiency. We explained that, because *the crime was not complete* until the defendant incurred a tax deficiency, the statute of limitations could not begin to run until that point in time." *Id.* at 857 (internal citation omitted) (emphasis added). But this is consistent with the holding that "a prosecution under § 7201 is timely if commenced within six years of the last act of evasion, where a defendant incurred a tax deficiency and then committed affirmative acts of evasion." *Id.* (internal quotation marks and citation omitted). Citing *Anderson*, the *Thompson* court affirmed that "where a defendant has already incurred a substantial tax deficiency, the statute of limitations begins to run on the date of the last affirmative act of evasion." *Id.*

The Defendant in this case relies on *Payne* without properly distinguishing it. (*See* Def.'s Resp. to Govt.'s Argument 8 [Dkt. No. 172].) But despite this, consistent with *Anderson* and *Thompson*, he states that he "does not dispute that a prosecution under § 7201 is timely if commenced within six years of the last act of evasion, where a defendant incurred a tax deficiency and then committed affirmative acts of evasion." (*Id.*) Thus curiously, in light of this concession, he still maintains that "[c]riminal prosecution for all years alleged in the Second Superseding Indictment is barred by the statute of limitations." (Def.'s Resp. Court's Req. Briefing 2 [Dkt. No. 169].) According to Defendant, because his tax return for 1995 was timely filed (in April of 1996) and later found by the Tax Court in 2000 to have been false and evasive, "the last act necessary for the elements of the offense of evading taxes for the year 1995 to be complete did occur in April 1996" but "no prosecution was initiated during the time period

between April 1996 and April of 2002, the six year period after completion of the last act

necessary for the offense." (Def.'s Resp. to Govt.'s Argument 9-10 [Dkt. No. 172].) The 1995

tax year charged in the Second Superseding Indictment was therefore barred, Defendant argues,

and because all charges were included in a single count of the Second Superseding Indictment it

is impossible to know whether the jury was unanimous in convicting Defendant based on tax

years not barred by the statute of limitations.

Because Defendant does not dispute that the rule from *Anderson* applies, it seems that his

position must rely on a mistaken "first down" theory of the application of the statute of

limitations, as noted by the Government with its comparison to professional American football in

the October 17, 2012 hearing. (Tr. Hrg. Oct. 17, 2012, at 25.) Defendant argues that "[w]hat

seems clear from a fair reading of *Anderson* is that, after filing a false and evasive return, which

commences the running of the statute of limitations, the time period of limitation may be

extended by an affirmative act of evasion *occurring within that time period*. (Def.'s Resp. to

Govt.'s Argument 10 [Dkt. No. 172] (emphasis added).) The interpretive problem arises in

Defendant's observation about a further act of evasion "occurring within that time period."

Defendant explains further:

> In the instant matter, the act of evasion with respect to the taxes due for the
> periods 1994 and 1995, were the filing of the false and evasive returns. No further
> affirmative act is alleged to have occurred within the six-year period which would
> extend the period of limitations. Once the statute of limitations has run, it has run,
> barring prosecution, unless there is an act which extends it during the period of
> the statute or there is an express waiver. For those tax returns filed in 1994 and
> 1995, the crime alleged under § 7201 was complete as of the year following, there
> was no affirmative act extending [sic] during the limitations period extending the
> reach of the statute of limitations, and prosecution was therefore barred as of
> April 15, 2002.

(*Id.* at 11.) Under this interpretation, if Defendant would have committed a further affirmative

act between 1996 and 2003, then the Government would have gotten a "first down" and the

12

Second Superseding Indictment brought on October 19, 2011 would not implicate the statute of limitations: "If the first affirmative act alleged in the Indictment fell within six years of April 15 of 1996, the Government would be entitled to prosecute by means of its Second Superseding Indictment, filed October 19, 2011, because September 12, 2003, the first alleged affirmative act, extends the period of limitations, and likewise the subsequent alleged affirmative acts through and including July 5, 2006, the last alleged affirmative act." (Def.'s Am. Mem. Supp. Mot. Judg. Acquittal 7 [Dkt. No. 180].) This is a two-dimensional reading of the application of the statute of limitations and not least because it ignores how the Second Superseding Indictment relates back to the date of the initial Indictment, as discussed in note 15 below.

But to be fair, an incorrect though not entirely unreasonable inference stemming from an ambiguity in *Anderson* seems to have informed Defendant's interpretation that an affirmative act must be committed during the six years following the last act of evasion in order to renew the running of the statute of limitations, in first down fashion. The facts in *Anderson* (and *Ferris*, despite the relative clarity of those courts' expression of the rule itself) are arguably ambiguous about whether such a "first down" is required. In *Anderson*, the defendant's tax deficiency was incurred in 1992 and the indictment was brought in 1999. But because the defendant had filed a false tax return in 1996 (which was within six years of 1992), the Government could be understood to have gotten a first down and the indictment "was filed well within the six-year statute of limitations." *Anderson*, 319 F.3d at 1219. Similarly, in *Ferris*, as discussed and relied upon by *Anderson*, the facts conceivably show such a first down: "while the defendant incurred his tax liabilities in 1976 and 1977, his affirmative act of evasion in 1983 brought the offense within six years of the indictment" which was filed in 1985. *Id.*

13

In *Thompson*, also, the defendant argued that an indictment returned in December 2002 was brought outside of the six year statute of limitations for tax years 1992, 1993, 1994, and 1995. 518 F.3d at 856. But the court pointed to the indictment's allegation that the filing of a false amended corporate tax return in January 1998 was an affirmative act of evasion relating to each count of tax evasion. *Id.* Thus, the Government argued and the jury was instructed that it "must unanimously agree that the affirmative act of evasion occurred on or after December 18, 1996." *Id.* at 857 (internal quotation marks and citation omitted). On this basis, the court affirmed the district court's holding that the counts of tax evasion were within the six year statute of limitations. "[T]o hold otherwise would only reward a defendant for successfully evading discovery of his tax fraud for a period of six years subsequent to the date the returns were filed." *Id.* at 856 (quoting *Anderson*, 319 F.3d at 1220 (quoting *United States v. Dandy*, 998 F.2d 1344, 1355 (6th Cir. 1993)).

Based on how the governing rule interacts with these specific fact scenarios, Defendant might be excused for mistakenly reading a non-existent first down mechanism into the statute of limitations. These particular fact scenarios also obscure the fact, explained by the Government in the October 17, 2012 hearing, that the proper way to interpret the "running" of the statute of limitations is to count six years back from the date of the indictment for an evasive act in furtherance of the scheme of tax evasion. (Tr. Hrg. Oct. 17, 2012, at 26-27.)[14]

---

[14]   THE COURT: What does the language mean where it says within the period of limitations?
MS. GOEMAAT: That is a good question, Your Honor, because I believe that this is where the confusion is and we have briefed this. *The period of limitations is the six years prior to the date of indictment. That is the period of limitations.* Mr. Killpack, I believe, is arguing that the period of limitations is six years after the time when the taxes become due and owing. But that, Your Honor, is not when the statute begins to run for the simple reason that sometimes the taxes become due and owing and the crime has not yet been [completed]. It is very possible that taxes can be due and owing and not be paid, but that a defendant or a target or taxpayer has not yet committed an affirmative act of evasion. If that is the case, then the crime committed is 26 U.S.C. 7203, the misdemeanor crime of failure to pay. That crime does not have an affirmative act element. The crime of tax evasion is not even committed until an affirmative act—yes, the crime of tax evasion is not even committed until the defendant commits an affirmative act.  (Tr. Hrg. Oct. 17, 2012, at 26-27 (emphasis added).)

But, significantly, this reading of *Anderson/Ferris* and *Thompson* fails to account for the holding in *United States v. Trownsell*, 367 F.2d 815 (7th Cir. 1966). *Trownsell* was cited by the Tenth Circuit in *Payne* to explain the reasoning for the rule under which courts "extend the statute of limitations beyond six years after the defendant incurred a tax deficiency when the defendant has taken a subsequent affirmative act to conceal his crime." *Payne*, 978 F.2d at 1179. In *Trownsell*, the Seventh Circuit found that the statute of limitations had not run where an indictment was returned in 1964 for tax deficiencies incurred for tax years 1946 to 1953. No affirmative acts were charged during the six year period following 1953 (i.e. in the interval between April 15, 1954, when the tax deficiency for 1953 would have arisen, and April 15, 1960, when the six year statute of limitations would have run under Defendant's first down theory). Rather, the defendant in *Trownsell* liquidated assets and deposited the resulting funds into a Swiss bank account "placing it beyond the reach of the Government" in 1961, already eight years since the last year for which a tax deficiency was owing. The court found that the disposition of assets and deposit of funds in the Swiss bank account in 1961 was part of the conduct involving the tax deficiency. Because it was within six years of the filing of the indictment (counting back from the indictment), it was within the statute of limitations. *Trownsell*, 367 F.2d at 816. To use the language of *Payne*, "a prosecution under 7201 is timely if commenced within six years of the last affirmative act of evasion." 978 F.2d at 1179.

Here, the Second Superseding Indictment charges Defendant with tax evasion for 1995, 1999, 2000, 2001, 2002, 2003, and 2004. The last affirmative act alleged in the Second Superseding Indictment was committed in 2007. (Second Superseding Indictment 3 [Dkt. No. 64].) The jury was instructed that to find the Defendant guilty, it must find the commission of an affirmative act within six years of the filing of the original Indictment, specifically instructing

that it must find an affirmative act committed on or after October 22, 2003. (Jury Instruction 15-A, 15-B, at 31 [Dkt. No. 159].) In other words, Defendant filed a false and evasive tax return with respect to tax year 1995. In the years after that, Defendant continued to commit affirmative acts that were "connected to" the tax evasion for 1995, including affirmative acts committed after October 22, 2003, thus bringing the entire artifice of tax evasion from 1995 onward within the statute of limitations counting back from October 22, 2009, the date of the filing of the original indictment. (Tr. Hrg. Oct. 17, 2012, at 19.)[15] The Government explained the connection of the affirmative acts that were within the statute of limitations (counting back six years from the original Indictment) to the tax deficiency for 1995. In 2002 and 2003,

> [Defendant] started filing illegitimate mortgages, and these illegitimate mortgages were meant—they were at about 150 percent of the property value and they were meant to cloud equity in the property to further hide them from the IRS, or make them look like undesirable assets, essentially to protect them, even though he had this mounting tax due and owing [including from 1995]. Then all of the subsequent actions, which are documented by the affirmative acts, mainly the UCC financing statements, and then, of course, there's the course of activity interfering with the levy on Dr. Howard. Those were all meant to protect the

---

[15] The Second Superseding Indictment relates back to the original Indictment meaning that the statute of limitations is tolled for purposes of the Second Superseding Indictment so that it runs as of the date of the original Indictment returned on October 22, 2009. A superseding indictment "is not barred by the statute of limitations unless it broadens or substantially amends the charges in the first indictment." *United States v. Davis*, 953 F.2d 1482, 1491 (10th Cir. 1992). The issue revolves around the fairness of notice provided to a defendant about what he or she is being charged with. "If allegations and charges . . . are 'substantially the same' as those contained in the original indictment, sufficient notice is presumed." *Id.*; *see also United States v. Salmonese*, 352 F.3d 608, 622-623 (2d Cir. 2003) (finding that the addition of overt acts did not materially broaden or substantially amend the originally charged conspiracy); *United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993) ("When a superseding indictment does no more than specify the exact mechanics of a defendant's participation in a previously charged offense, it does not represent a material broadening or substantial amendment of the original indictment."); *United States v. Lash*, 937 F.2d 1077, 1081-82 (6th Cir. 1991) (finding the superseding indictment did not substantially change the original indictment as it "merely alleges overt acts performed in furtherance of the conspiracy and provides more detail"). Here, the original Indictment and the Second Superseding Indictment are "substantially the same"—Defendant had fair notice of the charges against him based on the original Indictment because the Second Superseding Indictment did not "substantially change" the original charge. Limited changes were made in the Second Superseding Indictment to the introductory allegations but "[t]he affirmative acts alleged in the Second Superseding Indictment are identical to those alleged in the first Superseding Indictment." (Pl.'s Reply to Def.'s Resp. to Court's Req. Brief. 11 [Dkt. No. 171].) Any changes "merely parse and elucidate the compound acts alleged in the original Indictment." (*Id.*) Affirmative Acts E and F of the Second Superseding Indictment did not appear explicitly in the original Indictment "but they are so inexorably intertwined with the charged conduct of the original Indictment that no reasonable defendant would be surprised by the new allegations"; they are, in fact, "encompassed in the behavior charged in one of the original affirmative acts." (*Id.* at 12-13.)

> properties that the IRS was putting liens on in order to collect on the 1995 tax year, and so that's the connection. So although it is true that the September [2003] act[16] is not in the statute of limitations, all of the acts thereafter were equally intended to protect his property from the IRS collections agency and are, therefore, unequivocally connected to the tax that they were trying to collect, which is the 1995 tax.

(Tr. Hrg. Apr. 5, 2012, at 19-20 [Dkt. No. 177].) The Government further explained the

connection as follows:

> It was at that time [2002-2003], after letting his property sit in this web of trusts for approximately 10 years that the defendant began this pattern of obfuscatory behavior where he was hiding his one huge asset which is to say his land. . . .

> So in 2004, and thereafter, the IRS is continuing to try to collect on tax owed from tax year 1995 by putting liens on, for example, his property then held in Grand Scale and encumbered by false mortgages and then ultimately encumbered by the false UCC filing statement. So you see, Your Honor, all of these affirmative acts described by the government were intended by the defendant to layer and layer and layer his huge asset which is his 18 parcel farm essentially, so that collections couldn't get to it. And reasons collections was trying to get to it is because he had all of this tax due and owing. But at the time that he was committing these acts, he had tax due and owing for tax year 1995.

(Tr. Hrg. Oct. 17, 2012, at 17-18.)

The Government further clarified that the Tax Court had ruled in 2000 that Defendant's

tax return for 1995 was false and evasive and that he therefore had substantial amounts due and

owing arising from 1995 (and other years). As a result, the IRS began putting liens on

Defendant's property in 2002 for tax owed in 1995 "and this catapults the defendant into yet

more behavior such as encumbering a property with false mortgages to cloud equity, filing false

UCC statements, and other such things"; these affirmative acts committed on or after October 22,

2003 are "responding directly to efforts by the IRS to collect on the 1995 tax year." (*Id.* at 19.)

> So the connection is that the defendant has a large amount of tax due and owing including tax year 1995. In 2002, in 2003, the collections division [of the IRS] begins enforcement action. They are filing liens which, Your Honor, essentially means they're trying to take the property. At this time, the defendant begins

---

[16] Alleged in paragraph A of the Second Superseding Indictment.

committing the affirmative acts in order to make it more difficult for the IRS to take his property to satisfy his growing tax debt. . . . Included in that cumulative tax debt the entire time that he was committing these affirmative acts of evasion [after October 22, 2003] was the 1995 tax year.

(*Id.* at 21-22.) In fact, if the IRS had been "successful in claiming any of this property or intercepting the payments or any of the attempts that they made to collect on his tax debt, it would have gone directly to the 1995 tax year debt." (*Id.* at 23.)

In this explanation, the Government also discussed and allayed the court's concerns relating to a further wrinkle in the analysis—the fact that the civil statute of limitations for collections ran out on September 26, 2011. (*See id.* at 24.) As discussed above, in order to be complete the crime of tax evasion requires both a tax deficiency, i.e. a tax due and owing, and an affirmative act of evasion. As long as the tax debt in question remains due and owing, therefore, further affirmative acts of evasion can become the basis on which the tax evasion statute of limitations is measured. Thus, in theory, if the collections statute of limitations has run for the tax deficiency for a particular tax year, then there is no longer a tax due and owing for that year and the crime of tax evasion is no longer technically "complete," provided that an indictment has not already been brought before the collections statute has run. (Tr. Hrg. Apr. 5, 2012, at 22 [Dkt. No. 177].) The collections statute had not yet run when the original Indictment was brought in October 2009.[17] The Second Superseding Indictment relates back to the original Indictment and thus does not implicate the tax evasion statute of limitations.

---

[17] Also, the Government argued persuasively that

[w]hen the defendant's tax became uncollectible for 1995, in September 2011, he had long since completed his crime. The last affirmative act of evasion charged in the Second Superseding Indictment occurred in or about 2007. Four years later, the defendant had successfully evaded the tax, interest, and penalties due for 1995. The subsequent expiration of this tax liability does not impact the import, purpose, and intent behind the defendant's actions between September 2003 and 2007. Moreover, the defendant was charged in the original Indictment on October 22, 2009, almost two years prior to the expiration of the collection statute. To give any weight to the later expiration of the tax liability would be to suggest that the ten continuances of the trial somehow negated the defendant's criminal conduct. . . . The defendant is charged with attempted evasion of

The court therefore finds that the six year statute of limitations for tax evasion did not bar the prosecution of Defendant on the charges in the Second Superseding Indictment.

### 3.    *Unanimity of Verdict*

Defendant's arguments about the unanimity of the verdict essentially depend on whether the statute of limitations bars 1995 or other tax years, which the court has found above that it does not. But the court also notes the Government's argument that evasion of payment of tax cases are "generally charged in a single count" of an indictment "where the defendant engages in a course of conduct to evade the payment of tax for multiple years." (Pl.'s Reply to Def.'s Resp. to Court's Req. Brief. 15 [Dkt. No. 171] (citing *United States v. Gonzalez*, 58 F.3d 506 (10th Cir. 1995).) Moreover, the Tenth Circuit has held that "[i]n this circuit, as in most others, it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." *United States v. Strasser*, 971 F.2d 470, 477-78 (10th Cir. 1992). The court twice instructed the jury that its verdict must be unanimous. (*See* Preliminary Jury Instruction 3 and Jury Instruction 21 [Dkt. No. 159].) And the court specifically instructed the jury that it must find an affirmative act committed on or after October 22, 2003 to convict Defendant. (*See* Jury Instruction 15-A, 15-B [Dkt. No. 159].) The jury returned a unanimous verdict. (*See* Jury Verdict [Dkt. No. 162].) As the Tenth Circuit held in *Thompson*, and in light of the combination of the general unanimity instructions with the instruction to find at least one act on or after October 22, 2003, "the jury's finding the [Defendant] was guilty, therefore, necessarily meant that it found

---

payment of tax—the fact that he was actually successful in evading that tax, years after completion of the affirmative acts, does not obviate that element. The elements of the crime were perfected years before the statute of limitations for collection expired.

(Pl.'s Resp. to Court's Req. for Briefing 9 [Dkt. No. 166].)

beyond a reasonable doubt that [he] committed an affirmative act of evasion" on or after October 22, 2003. 518 F.3d 832, 857.

In any event, this line of inquiry is technically moot because the statute of limitations does not bar any of the years of tax evasion for which Defendant was charged and the unanimous verdict is therefore not suspect.

## B.      Sufficiency of Evidence To Create a Substantial Tax Liability

The Government's argument is well taken that the court does not have the authority to initiate a *sua sponte* Rule 29 inquiry as to the sufficiency of the evidence to sustain a conviction after the jury has returned its verdict. (Pl.'s Reply to Def.'s Resp. to Court's Req. Brief. 2 [Dkt. No. 171].) Of course, the court may make such an inquiry about the sufficiency of the evidence before submission to the jury under Rule 29(a) of the Federal Rules of Criminal Procedure. And provided a defendant moves the court for a judgment of acquittal before the close of all the evidence, the court may reserve on the motion and consider it after the jury has returned a verdict. Fed. R. Civ. P. 29(b). But reasoning that *sua sponte* action by a court *after* the verdict to review the sufficiency of the evidence would create undesirable surprises in the judicial process, the Supreme Court has held that the plain language of Rule 29(c) forecloses the possibility of a court's initiation of such a review without having reserved on a prior motion made before the close of the evidence. *United States v. Carlisle*, 517 U.S. 416, 421 (1996); *accord United States v. Davis*, 992 F.2d 635, 637-38 (6th Cir. 1993) ("By its express terms, Rule 29 contemplates that the trial court may enter a judgment of acquittal on its own motion only prior to the submission of the case to the jury.").

But the court notes that its inquiry about the sufficiency of the evidence—which the Government, not the court, characterized as a *sua sponte* Rule 29 motion—arose in the context

of and was ancillary to the potential structural Sixth Amendment issue tied to the statute of

limitations. The court believes that an injustice would be perpetrated on Defendant if the court's

unusual Sixth Amendment inquiry were allowed to disrupt Defendant's ability to raise these

motions, especially because of the admittedly confusing procedural posture that the court's

action created. The court believes that it has the authority to deem Defendant's motions under

Rules 29 and 33 timely made given the court's actions—not because it continues to have the

power to act on these issues after the specified timeframe provided in the Rules elapses, which it

does not under controlling precedent, but rather because the formal structural Sixth Amendment

inquiry that the court raised immediately upon the jury's return of the verdict (instead of

accepting the verdict) effectively cut off or at least obscured Defendant's duty and ability to raise

those motions as contemplated by the Rules. However, the court need not deem the motions

timely on that pragmatic basis alone; rather, Rule 45 of the Federal Rules of Criminal Procedure,

as amended in 2005, specifically provides the court with authority to do so.

> 1.    *Rule 45*

The court thanks Defendant for helpful briefing on the timing implications of the 2005

amendments to Rule 45 of the Federal Rules of Criminal Procedure. In 2005, the Advisory

Committee for the Federal Rules of Criminal Procedure found that Rules 29, 33, and 34 of the

Federal Rules of Criminal Procedure "should be amended to be consistent with all of the other

timing requirements in the rules, which do not force the court to rule on a motion to extend the

time for filing, within a particular period of time or lose jurisdiction to do so." Fed. R. Crim. P.

45, advisory committee notes, "2005 Amendments" (2012). Rule 45(b)(2) was therefore meant

as a conforming amendment. *Id.* Under this amendment, "if for some reason the defendant fails

to file the underlying motion within the specified time, the court may nonetheless consider that

untimely motion if the court determines that the failure to file it on time was the result of excusable neglect." *Id.* Thus, Rule 45 now provides that "the court on its own may extend the time" for a motion pursuant to Rules 29, 33, and 34 of the Federal Rules of Criminal Procedure "after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B) (2012).[18]

Immediately upon the jury's return of the verdict, the court raised its questions arising primarily out of its structural Sixth Amendment concern surrounding the application of the statute of limitations to the 1995 tax year. The court requested the parties to brief those issues specifically. In light of this unusual procedural request, it would be unreasonable to conclude that Defendant was also required to file formal motions under Rules 29 and 33(b)(2) within the specified 14 day timeframes. As requested by the court, Defendant filed his first brief responding to the court's specific questions on February 9, 2012. This was admittedly outside the 14 day timeframe specified in Rules 29 and 33, but it might just be the most straightforward instance of "excusable neglect" possible because, in fact, the court created this procedural abnormality.

Additionally, as the Government has argued, the relief available to the court under Rule 45(b) is equitable in nature. (Pl.'s Opp. Def.'s Mot. Extend Time 2 [Dkt. No. 188].) Thus, the court is required "to consider a number of factors, including: 1) the danger of prejudice to the nonmoving party, 2) the length of the delay and its potential impact on judicial proceedings, 3) the reason for the delay, including whether it was within the reasonable control of the movant,

---

[18] Rule 45(b) reads in its entirety as follows:

    (b) Extending Time.
        (1) *In General*. When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
            (A) before the originally prescribed or previously extended time expires; or
            (B) after the time expires if the party failed to act because of excusable neglect.
        (2) *Exception*. The court may not extend the time to take any action under Rule 35, except as stated in that rule.

and 4) whether the movant acted in good faith." *United States v. Meacham*, No. 07-cr-10053-01-WEB, 2007 U.S. Dist. LEXIS 79385, at *3 (D. Kan. Oct. 24, 2007) (citing *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004)). Defendant has unquestionably acted in good faith in responding to the court's several requests for briefing which have functionally served as motions under Rules 29 and 33. Defendant merely formalized the motions in his much later specific filings. [Dkt. Nos. 185 and 186.] The Government faces no prejudice at all based on the court's decision to extend time pursuant to Rule 45(b) because Defendant's responsive briefs to the court's inquiries have raised his arguments pursuant to Rules 29 and 33 and the Government has exhaustively responded to each of these briefs and arguments. The delay has resulted from the court's own requests for briefing on the issues of structural concern. And, significantly, this delay and in fact the "excusable neglect" underlying Defendant's failure to file formal motions under Rules 29 and 33 within the specified timeframes was the result of "intervening circumstances beyond the [Defendant's] control"—namely, this court's extraordinary request for briefing before accepting the jury's verdict. *Torres*, 372 F.3d at 1162 (discussing "excusable neglect" in the context of Bankruptcy Rule 9006 and Rule 4(a)(5) of the Federal Rules of Appellate Procedure). The *Torres* court found that "fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *Id.* (holding that trial court abused its discretion in finding that delay in filing notice of appeal was the result of excusable neglect where the delay occurred because "defense counsel confused the filing deadlines for civil and criminal appeals"). Here, the fault for the delay is the court's.

The court therefore grants Defendant's motion for relief under Rule 45 of the Federal Rules of Criminal Procedure and extends the time for Defendant's filing of his motions under Rules 29 and 33. Moreover, the court deems Defendant's substantial February 9, 2012 brief [Dkt.

No. 169] as filings pursuant to those Rules given the overlapping nature of the court's structural Sixth Amendment concern about the statute of limitations and the ancillary questions about the sufficiency of the evidence.

      2.    *Rule 29*

      In reviewing Defendant's Motion for Judgment of Acquittal [Dkt. No. 186] under Rule 29, the court views all evidence and draws all reasonable inferences in the light most favorable to the Government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is the court's role to "determine whether the evidence, if believed, would establish each element of the crime." *Id.* at 1081 (citing *United States v. Vallo*, 238 F.3d 1242, 1246-47 (10th Cir. 2001)). But the Court does not consider "the credibility of witnesses and weigh[] the evidence as a thirteenth juror." *United States v. Ortiz-Ortiz*, 57 F.3d 892, 894 (10th Cir. 1995). The evidence necessary to support a verdict "need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Wilson*, 182 F.3d 737, 742 (10th Cir. 1999) (quoting *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir. 1991)). This "reflects a deep respect for the fact-finding function of the jury." *United States v. White*, 673 F.2d 299, 302 (10th Cir. 1982).

      The Rule 29 motion is ultimately premised "upon an argument that the verdict was not unanimous and an argument that the charge was time-barred." (Pl.'s Opp. Def.'s Mot. Extend Time 1 [Dkt. No. 188].) Setting aside the statute of limitations issue based on the court's finding that the application of the statute of limitations does not bar 1995 or the affirmative acts occurring on or after October 22, 2003, the remaining questions about the sufficiency of the

evidence to support the jury's verdict "all concern the tax due and owing element" of the offense. (Pl.'s Resp. to Court's Req. for Briefing 7 [Dkt. No. 166].) The Government framed the question succinctly: "whether the United States' proof of a substantial tax due and owing, without corroboration as to the precise amounts of income earned or possible deductions, is sufficient." (*Id.* at 10.) The court agrees that, evaluating the evidence presented at trial in the light most favorable to the Government, the documentary and testimonial evidence is sufficient to support the verdict.

Controlling precedent provides that certified transcripts reflecting tax assessments are sufficient to establish tax due and owing. *See Chisum*, 502 F.3d at 1244 ("'[C]ertified transcripts'—what the IRS calls 'Certificate[s] of Assessments'—were admitted at trial . . . and are sufficient to establish the propriety of tax assessments in the absence of conflicting evidence . . . ."); *March v. I.R.S.*, 335 F.3d 1186, 1188 (10th Cir. 2003) ("Form 4340 details the assessments made and the relevant date that a Summary Record of Assessment was executed. The courts have also held that these Certificates on Forms 4340 'are *presumptive proof of a valid assessment*.'") (citations omitted) (emphasis added).[19] As noted by the Government,

> The United States' evidence of tax loss consisted largely of such certificates of assessment (Forms 4340) for each year. See Exhibits 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8. These forms reflect the IRS's assessments of tax, penalties, and interest for each tax year, in addition to any payments applied to those accounts. The

---

[19] *Accord United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981) ("The certificates of assessment against Voorhies for personal tax years 1970 and 1972 were introduced into evidence at trial. In the absence of an administrative- or judicial-level contention by the taxpayer that these assessments were invalid, the certificates of assessment were prima facie correct and therefore adequate evidence of the amount of Voorhies' tax liability."); *United States v. Neumann*, No. 89-3597, 1990 WL 192979, at *1 (7th Cir. Dec. 3, 1990) (unpublished) (in foreclosure action, finding "[t]he certificates of assessments and payments submitted by the United States . . . constituted presumptive proof of the validity of the assessments. . . . The Neumanns failed to produce any evidence to overcome this presumption. Therefore the district court's entry of judgment for the United States on the issue of the Neumanns' tax liability was proper."); *United States v. Silkman*, 220 F.3d 935, 937 (8th Cir. 2000) ("when, as here, the taxpayer's other actions . . . permit the jury to find willful tax evasion, it is entirely appropriate to consider the unchallenged assessment prima facie evidence that some tax was owing, which is all the government needs to prove to satisfy the tax deficiency element of this offense. . . . It is rational to infer that an assessment which the taxpayer chose not to contest is prima facie evidence of the asserted deficiency.") (internal quotation marks and citation omitted).

assessments reflect the IRS's computation of the tax owed; tax determinations are, by definition, post-determination of income and deductions. *The assessments are presumptively valid, and the United States is not required to negate any possibility of entitlement to deductions for years in which the defendant chose not to file tax returns.* For 1995, the United States also introduced the United States Tax Court Order at Exhibit 7-1, as discussed above. The Forms 4340 for 1999, 2000, 2001, 2002, 2003, and 2004 also establish a substantial tax due and owing. These transcripts establish that the tax, penalties, and accrued interest due for 1995 and 1999 through 2004 is $1,317,935.96, reduced to $1,292,078.57 after the application of the involuntary levy payments. See Exhibit 1-30. Whether a tax deficiency is substantial is a jury question and cases suggest that relatively small sums can be deemed sufficient. *See, e.g., United States v. Siragusa*, 450 F.2d 592 (2d Cir. 1971) (affirming conviction where tax deficiency was $3,956, $900, and $2,209, respectively, for three years). As in *Silkman*, the defendant was free to introduce evidence to controvert the IRS's assessments. He chose not to do so. *Even if he had presented evidence of his finances and alleged deductions, the transcripts introduced are sufficient for a jury to find a substantial tax due and owing.*

The United States need not present evidence to corroborate its computations where, as here, unchallenged assessments formed the basis for the tax due and owing. Nonetheless, for a number of years, there is corroborating evidence of income.

(Pl.'s Resp. to Court's Req. for Briefing 11-12 [Dkt. No. 166] (emphasis added).)

As noted above, the court does not sit as a thirteenth juror in this inquiry, *Ortiz-Ortiz*, 57 F.3d at 894; rather, precisely because of its "deep respect for the fact-finding function of the jury," *White*, 673 F.2d at 302, the court defers to the jury's finding where the evidence is sufficient to allow a reasonable trier of fact to find beyond a reasonable doubt that Defendant had a substantial tax due and owing. That is the case where, as here, the law is currently well-settled relating to the Government's use of I.R.S. certificates of assessment on Form 4340 as evidence of tax due and owing, especially when their use went unchallenged by Defendant at trial. The corroborating evidence of income presented by the Government at trial—such as Defendant's occupation as a chiropractor and the testimony by Dr. Howard, who purchased Defendant's chiropractic practice in 2004, of his estimation, based on patient flow, of the income earned by

Defendant from the practice in the years in question—was also sufficient to allow a reasonable trier of fact to make this finding. The court must therefore deny Defendant's Rule 29 motion.

    *3.    Rule 33*

    Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for new trial should be granted if, after weighing the evidence and the credibility of the witnesses, the court determines that the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred." *United States v. Garcia*, 182 F.3d 1165, 1170 (10th Cir. 1999) (internal quotation marks and citations omitted). But "[t]he Tenth Circuit disfavors the granting of new trials and states that caution should be used in granting them." *United States v. Veater*, No. 2:09-cr-761-DAK, 2012 U.S. Dist. LEXIS 148721, at *2 (D. Utah Oct. 15, 2012) (citing *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969)). Contrary to the court's role in evaluating a Rule 29 motion, however, in deciding a Rule 33 motion, "it has often been said that [the trial judge] sits as a thirteenth juror." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) (quoting *United States v. Turner*, 490 F.Supp. 583 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980), *cert. denied*, 450 U.S. 912, (1981)). Even so, "[a] motion for a new trial based on the sufficiency of the evidence should be denied if the 'evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the government, would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *Veater*, 2012 U.S. Dist. LEXIS 148721, at *2 (quoting *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997)). Ultimately, "[w]hether to grant a motion for a new trial is a decision within the sound discretion of the district court" and the Tenth Circuit "will not reverse the court's decision absent a plain abuse of that discretion." *United States v. Bailey*, 1991 U.S. App. LEXIS 21944, *4-*5 (10th Cir. Sept. 11,

1991) (citing *United States v. McIntyre*, 836 F.2d 467, 472 (10th Cir. 1987) and *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

Defendant's Rule 33 motion revolves around its arguments that the jury's verdict was not unanimous because of his interpretation of the statute of limitations. The court has settled that issue in finding above that the statute of limitations, properly understood, does not bar the prosecution of tax year 1995 or affirmative acts of evasion of the tax due and owing for that year occurring on or after October 22, 2003. Because the jury was appropriately instructed as to both the requirement that they unanimously find Defendant guilty and the application of the statute of limitations to exclude affirmative acts alleged in the Second Superseding Indictment but occurring before October 22, 2003, the court finds no basis to doubt the unanimity of the jury's verdict. Accordingly, the court denies Defendant's motion pursuant to Rule 33.

## CONCLUSION

The court has carefully considered the parties' briefing provided at the court's request and finds that the statute of limitations does not bar the prosecution of charges of tax evasion for the year 1995 based on affirmative acts in furtherance of that evasion committed on or after October 22, 2003, meaning within six years of the date of the original Indictment returned on October 22, 2009, counting backward from the Indictment. Therefore, in the absence of any structural Sixth Amendment concern arising out of a potential problem with the unanimous jury verdict based on charging all acts in a single count in the Second Superseding Indictment, the court ACCEPTS the jury's guilty verdict and directs it to be entered.

Accordingly, the court hereby DENIES Defendant's oral Motion to Arrest Judgment pursuant to Rule 34 made at oral argument on April 5, 2012 (Tr. Hrg. Apr. 5, 2012, at 39 [Dkt.

No. 177]) and as argued in Defendant's Amended Memorandum in Support of Motion for Judgment of Acquittal [Dkt. No. 180].

Moreover, the court GRANTS Defendant's Motion for Extension of Time made pursuant to Rule 45 of the Federal Rules of Criminal Procedure [Dkt. No. 184] and, on that basis, has considered Defendant's motions made pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, with the following disposition of each:

- The court hereby DENIES Defendant's Motion for Judgment of Acquittal made pursuant to Rule 29 [Dkt. No. 186].

- The court hereby DENIES Defendant's Motion for a New Trial made pursuant to Rule 33 [Dkt. No. 185].

SO ORDERED this 26th day of March, 2013.

BY THE COURT:

Clark Waddoups
United States District Judge